UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

O-N MINERALS CO.,

        Plaintiff,

v.

        Case No. 11-12212
        Honorable Thomas L. Ludington

NATIONAL BROTHERHOOD OF
BOILERMAKERS' CEMENT, LIME,
GYPSUM, and ALLIED WORKERS
DIVISION AND LOCAL LODGE NO. D500,

        Defendants.
_____ /

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This case involves a dispute between an employer and a labor union about employees' pensions. Specifically, what should be done about the employer's promise in the collective bargaining agreement to contribute to a pension trust now that the trust refuses to accept the funds? Since the trust no longer accepts the funds, the employer, Plaintiff O-N Minerals Co., has been placing the funds into an escrow account. The union and its local lodge, Defendants National Brotherhood of Boilermakers' Cement, Lime, Gypsum, and Allied Workers Division and Local Lodge No. D500, would like the funds to be paid to the employees as wages. This issue, however, is not before the Court. At least not directly.

Rather, the question for the Court is whether the parties must arbitrate their dispute. To answer the question, three provisions of the parties' collective bargaining agreement are relevant. First, Article VIII establishes hourly wage scales for each employee. Second, Appendix A establishes the amount of contributions that Plaintiff will make to the pension trust. And third,

Article XII establishes a grievance procedure for dispute resolution culminating in arbitration. Limiting the arbitrator's authority, Article XII also provides that the arbitrator "shall not have jurisdiction or authority to alter in any way the provisions of this Agreement." Compl. Ex. 1, at 46, ECF No. 1-2.

The parties executed the collective bargaining agreement in 2008. In December 2010, the pension trust specified in Appendix A refused to accept Plaintiff's contributions. Defendants then requested that Plaintiff pay the funds directly to the employees. When Plaintiff refused, Defendants brought a grievance asserting "that contributions formerly paid to the Pension Trust should be added to the employees' hourly wages." Countercl. ¶ 22, ECF No. 6. Plaintiff responded by filing suit in this Court seeking a declaration that the parties' dispute was not subject to arbitration. Defendants cross-claimed, seeking to compel arbitration. Both parties now move for summary judgment. ECF Nos. 11,12.

Because of the jurisdictional limit in Article XII, Plaintiff is entitled to judgment. Defendants' grievance does not seek to enforce the parties' agreement, but to alter it — to amend the applicable wage scales to account for the pension trust's decision to refuse the pension contributions. Defendants' proposal may be a reasonable solution to an unforeseen change in circumstances. The proposed alteration, however, does not interpret or apply the collective bargain agreement's terms. It contradicts them. Plaintiff is not required to arbitrate this proposed alteration to the collective bargaining agreement. Accordingly, the Court will grant Plaintiff's motion and deny Defendants' motion.

I

Plaintiff is a Michigan corporation operating a limestone quarry and processing plant outside Rogers City, Michigan. Defendants are an international labor union and its local lodge

representing employees at the plant. Effective August 1, 2008, the parties entered into a collective bargaining agreement. *See* Compl. Ex. 1. Article VII of the agreement establishes "standard hourly wage scales." *Id*. at 15–16. An "Equipment Technician I," for example, earns $18.50 per hour in year one of the agreement, $18.74 in year two, $19.21 in year three, and $19.69 in year four. *Id*. at 16. Appendix A establishes the pension contribution scales. For each hour an employee works, Plaintiff agrees to contribute $2.10 in year one of the agreement, $2.20 in year two, $2.25 in year three, and $2.30 in year four. *Id*. at 55–56. The contributions are to be paid to "the Boilermaker-Blacksmith National Pension Trust" (which is not a party to the collective bargaining agreement).

Article XII of the agreement establishes a grievance procedure culminating in arbitration. *Id*. at 42–49. "Grievance" is a defined term. It "is limited to a complaint or request of an employee which involves the interpretation or application of, or compliance with the provisions of this Agreement." *Id*. at 43. "Grievances not satisfactorily settled [by the parties]," Article XII provides, "may be appealed to an impartial arbitrator appointed by mutual agreement of the persons certified by the Company and the Union." *Id*. at 46. As noted, the agreement also defines — and limits — the arbitrator's authority, providing:

> An arbitrator to whom any grievance shall be submitted in accordance with the provisions of this Article shall have jurisdiction and authority to interpret and apply the provision of this Agreement insofar as shall be necessary to the determination of such grievance, but he shall not have jurisdiction or authority to alter in any way the provisions of this Agreement.

*Id*. at 46–47.

In November 2009, the Boilermaker-Blacksmith National Pension Trust notified Plaintiff that the required minimum contribution rate to participate in the trust would be increased the following year. In 2010, the minimum rate would increase to $2.835 per hour (compared to

$2.20–$2.25 under the collective bargaining agreement). In 2011, it would increase to $3.57 (compared to $2.25–$2.30 under the agreement). And in 2012, it would increase to $4.305 (compared to $2.30 under the agreement).

Plaintiff informed the trust that it would not increase its contributions. The trust, in turn, informed Plaintiff that it would be expelled if Plaintiff did not contribute at the minimum annual rate. Plaintiff did not increase its annual contribution rate. In December 2010, the trust expelled Plaintiff. Since Plaintiff's expulsion, it has placed the funds that would have gone into the trust into "an escrow-like account." Compl. ¶ 33.

One month after Plaintiff was expelled, Defendants notified Plaintiff that the pension funds should not be placed in an escrow account, but rather be paid directly to the employees as wages. "It is the position of the Union," Defendants wrote, "that contributions to the Boilermakers-Blacksmith National Pension Plan provided in Appendix A (Benefits Agreement) of the current Collective Bargaining Agreement should be restored to the Bargaining Unit Employees' Hourly Rate effective December 1, 2010." *Id*. ¶ 35. Defendants continued: "Please be advised that if the monies are not added to the Bargaining Unit Employees' Hourly Rate such will be considered a violation of Collective Bargaining Agreement and a grievance will be forthcoming." *Id*.

Negotiations between the parties followed, but proved unsuccessful. In March 2011, Defendants notified Plaintiff that the dispute between the parties should proceed to arbitration. In May 2011, Plaintiff filed suit in this Court seeking declaratory judgment that "Defendants may not seek or compel arbitration of the Grievance" and that Plaintiff "is not obligated to participate in an arbitration of the Grievance." *Id*. ¶ 54.

Defendants counterclaimed, seeking an order compelling the parties to proceed to arbitration. In pertinent part, the counterclaim asserts:

> The Parties' CBA calls for [Plaintiff] to pay wages and various fringe benefits to, or for the benefit of, employees covered by the CBA. These wages and benefits form a negotiated economic package that defines the complete compensation obligation on the part of [Plaintiff] for the benefit of its employees.
>
> Among the employee fringe benefits provided under the CBA are pension benefits provided by the Boilermaker-Blacksmith National Pension Trust. . . .
>
> Following the Pension Trust's termination of [Plaintiff] as a participating employer, [Defendants] informed [Plaintiff] of [Defendants'] position with respect to those contributions required under the CBA to be paid to the Pension Trust, but which were rejected by the Pension Trust for the period commencing December 1, 2010. [Defendants'] position, as stated to [Plaintiff] in a letter dated January 7, 2011, was that such contributions "should be restored to the bargaining unit employees' hourly rate effective December 1, 2010."
>
> [Plaintiff] disagreed with [Defendants'] position that contributions formerly paid to the Pension Trust should be added to the employees' hourly wages, and refused to pay such contribution amounts as additional wages to the covered employees. Accordingly, [Defendants] initiated a grievance regarding the dispute . . . .

Countercl. ¶¶ 14–15, 21–22.

Now before the Court are the parties' cross-motions for summary judgment. ECF Nos. 11, 12.

## II

Summary judgment should be granted if the admissible evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all facts and draw all reasonable inferences in favor of the nonmovant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## III

In three cases now known as the *Steelworkers* Trilogy, the Supreme Court established four fundamental principles of federal arbitration. *E.g.*, *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960); and *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960)).

First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T*, 475 U.S. at 648 (quoting *Warrior & Gulf*, 363 U.S. at 582). That is, "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T*, 475 U.S. at 648–49 (citing *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 374 (1974)).

Second, "the question of arbitrability — whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance — is undeniably an issue for judicial determination." *AT&T*, 475 U.S. at 649. Thus, "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Id*. (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547(1964)).

Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T*, 475 U.S. at 649. Rather, the court must simply evaluate whether the parties agreed to arbitrate the particular grievance. *Id*. at 650.

And fourth, under federal law "there is a presumption of arbitrability." *Id*. Consequently, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id*. (internal alteration omitted) (quoting *Warrior & Gulf*, 363 U.S. at 582–83).

In this case, Plaintiff bases its argument on the first principle — that a party can only be required to arbitrate those disputes that he has agreed to submit to arbitration. Observing that the agreement provides that the arbitrator "shall not have jurisdiction or authority to alter in any way the provisions of this Agreement," Plaintiff writes: "What the Court has before it is [Defendants'] claim for an arbitrator to alter the CBA and add new terms to the CBA." Pl.'s Mot. Summ. J. 14, ECF No. 11. That is, Defendants "want an arbitrator to rewrite the CBA and unilaterally move the $2.30 from Appendix A and add it to the already negotiated and specifically stated wage rates in Article VII(2)." *Id*.

Defendants, in contrast, base their argument on the fourth principle — the presumption of arbitrability. "[Plaintiff] can point to no 'express provision' in the CBA," Defendants write, "that excludes [Defendants'] grievance from the scope of the arbitration clause." Defs.' Mot. Summ. J. 10, ECF No. 11. Elaborating, Defendants explain that their "[g]rievance contends that Pension Trust contributions contained within the CBA are part of the complete economic package negotiated for the benefit of employees. . . . [Plaintiff] should be required to continue making these payments for the benefit of its employees in the form of wages." *Id*. at 9. Turning to Plaintiff's argument, Defendants continue: "The absence of any express language authorizing [Defendants'] requested remedy . . . does not prevent the arbitrator from fashioning a remedy. Indeed, arbitrators are routinely called upon to devise remedies not expressly provided in

CBAs." Defs.' Resp. to Pl.'s Mot. 4, ECF No 17. "If an arbitrator agrees with [Defendants] and finds that [Plaintiff] has not been excused from its obligation to make payment of the full economic package contained in the CBA, then it will be for the arbitrator to determine the precise contours of the remedy necessary," Defendants conclude. *Id*.

Plaintiff is correct that it need not arbitrate Defendants' grievance. Before this litigation began, Defendants acknowledge, they took the "position that contributions formerly paid to the Pension Trust should be added to the employees' hourly wages." Countercl. ¶ 22. Plaintiff disagreed, and so Defendants "initiated a grievance regarding the dispute." *Id*.

The dispute — whether the contributions that Plaintiff is required to make to the trust pursuant to Appendix A should instead be added the standard hourly wage scales — is not one contemplated by the parties' agreement.[1] On the contrary, it seeks to alter the express terms of the agreement. Under Article VII, for example, an "Equipment Technician I" earns $19.69 in year four. Compl. Ex. 1, at 16. Instead of earning $19.69 per hour in year four, Defendants' grievance asserts that an equipment technician I should earn $21.99 per hour. As the agreement provides that the arbitrator "shall not have jurisdiction or authority to alter in any way the provisions of this Agreement," such redrafting is not within the scope of the arbitrator's authority. Defendants' grievance is not subject to arbitration.

Against this conclusion, Defendants assert that they are not seeking to alter the agreement, but simply to have the arbitrator reorganize the existing "economic package that defines the complete compensation obligation on the part of [Plaintiff]." Countercl. ¶ 14. Thus, according to Defendants the whole ("the complete compensation obligation") is all that counts.

---

[1] Defendants, to their credit, acknowledge this. Responding to a request for admissions, Defendants admit that the parties "never had an agreement to fund contributions to the Pension Trust from deductions from Employee wages." Pls.' Mot. Ex. 3, at 2.

The relative values of the components (the rates of hourly wages and pension contributions) are immaterial, provided that the whole value remains constant. According to Defendants, the arbitrator can revise the standard hourly wage scales and pension contributions without altering the parties' agreement, provided that the "complete compensation obligation" is unchanged. This argument does not withstand inspection.

The agreement specifies the specific wages employees will receive. It specifies the pension contributions the employer will make. To convert pension contributions into wages would not enforce the "complete compensation obligation." It would rewrite it, taking two existing scales (the standard hourly wage scales and pension contribution scales) and combining them to come up with a new set of scales.[2] The arbitrator does not have this authority.

Against this conclusion, Defendants further assert that their proposed amendment is merely a "remedy," not the grievance itself. Responding to Plaintiff's motion for summary judgment, as noted, Defendants assert that their "[g]rievance seeks nothing more than enforcement of [Plaintiff's] promised payment of a complete economic package agreed to by the parties." Defs.' Resp. 4. Defendants' actions, however, demonstrate that Defendant's grievance is nothing more — or less — than their assertion that the amounts formerly contributed to the pension trust should be paid as wages.

In January 2011 (five months before this litigation commenced), Defendants first notified Plaintiff that Defendants were contemplating filing a grievance. "It is the position of the Union," Defendants wrote at that time, "that contributions to the Boilermakers-Blacksmith National Pension Plan provided in Appendix A (Benefits Agreement) of the current Collective Bargaining

---

[2] In passing, the Court notes that this alteration would also have tax implications, which go unaddressed by Defendants. Moreover, as the collective bargaining agreement does not contemplate this alteration, the arbitrator would have no guidance from the agreement on how to allocate these taxes. *See generally* Patricia E. Dilley, *The Evolution of Entitlement: Retirement Income and the Problem of Integrating Private Pensions and Social Security*, 30 Loy. L.A. L. Rev. 1063 (1997).

Agreement should be restored to the Bargaining Unit Employees' Hourly Rate effective December 1, 2010." Compl. ¶ 35. Defendants continued: "Please be advised that if the monies are not added to the Bargaining Unit Employees' Hourly Rate such will be considered a violation of Collective Bargaining Agreement and a grievance will be forthcoming." *Id.* Thus, in Defendants' own words, a "violation of Collective Bargaining Agreement" would occur "if the monies are not added to the Bargaining Unit Employees' Hourly Rate." *Id.* In the event of this violation, "a grievance will be forthcoming." *Id.*

In May 2011, Plaintiff brought suit seeking a declaratory judgment that it need not arbitrate this grievance. Defendants counterclaimed. Again, Defendants did not generally complain that the contributions to the pension trust had not been made; rather, they specifically complained that the contributions had not been paid directly to the employees as wages, writing:

> Following the Pension Trust's termination of [Plaintiff] as a participating employer, [Defendants] informed [Plaintiff] of [Defendants'] position with respect to those contributions required under the CBA to be paid to the Pension Trust, but which were rejected by the Pension Trust for the period commencing December 1, 2010. [Defendants'] position, as stated to [Plaintiff] in a letter dated January 7, 2011, was that such contributions "should be restored to the bargaining unit employees' hourly rate effective December 1, 2010."
>
> [Plaintiff] disagreed with [Defendants'] position that contributions formerly paid to the Pension Trust should be added to the employees' hourly wages, and refused to pay such contribution amounts as additional wages to the covered employees. Accordingly, [Defendants] initiated a grievance regarding the dispute . . . .

Countercl. ¶¶ 21–22. Again, paying the contributions as wages was not a proposed "remedy." Not paying the contributions as wages was the grievance itself.

Likewise, in moving for summary judgment on the counterclaim, Defendants reiterate the particulars of their grievance, writing:

> [Defendants'] Grievance contends that Pension Trust contributions contained within the CBA are part of the complete economic package negotiated for the benefit of employees. [Defendants] further [contend] that [Plaintiff] should be

required to continue making these payments for the benefit of its employees in the form of wages. . . .

[Plaintiff] should be required to pay to its employees as wages the former pension contributions in order for [Plaintiff] to fulfill its obligations for the complete economic package that it negotiated and agreed to in the CBA. Nothing in the CBA, express or otherwise, excludes such a claim from [Plaintiff's] arbitration obligation under the CBA.

Defs.' Mot. Summ. J. 9, 10. In sum, this is more than the remedy sought — it is the grievance itself.[3] And under the plain language of the parties' agreement, the arbitrator does not have the authority to hear this grievance. Notwithstanding that doubts should be resolved in favor of coverage, Plaintiff is entitled to summary judgment.

## IV

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment (ECF No. 11) is **GRANTED**.

It is further **ORDERED** that Defendants' motion for summary judgment (ECF No. 12) is **DENIED**.

                s/Thomas L. Ludington
                THOMAS L. LUDINGTON
                United States District Judge

Dated: April 20, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 20, 2012.

            s/Tracy A. Jacobs
            TRACY A. JACOBS

---

[3] Because Defendant's complaint that the contributions had not been paid directly to the employees as wages is more than the remedy sought, it is the grievance itself, the Court need not address what limitations, if any, the agreement imposes on an arbitrator's power to fashion an award. *Cf. Tobacco Workers Int'l Union Local 317 v. Lorrillard Corp.*, 448 F.2d 949, 955–56 (4th Cir. 1971); *Carey v. Gen. Elec. Co.*, 315 F.2d 499 (2d Cir. 1963).